## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LEVI BROWN,                                              :
                                                        :
            Plaintiff                             :
                                                        :
          v.                                     :    Civil Action No.
                                                        :
UNITED PARCEL SERVICE OF AMERICA,                       :
INC.,                                                   :    JURY TRIAL DEMANDED
                                                        :
            Defendant                             :    ELECTRONICALLY FILED

## COMPLAINT

Plaintiff Levi Brown, by his attorneys Broughal & DeVito, LLP, files this Complaint against Defendant United Parcel Service of America, Inc. and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for race discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.

2.      Plaintiff is African American and was employed by Defendant as a full-time supervisor at Defendant's Easton, Pennsylvania facility.

3.      Defendant subjected Plaintiff to race-based comments, stereotypes, threats,

4.      Defendant also required Plaintiff to perform full-time supervisory duties while compensating him at a lower part-time supervisor rate than white employees performing the same or substantially similar duties.

disparate treatment, a hostile work environment, and adverse employment action because of his race and color.

5.      Plaintiff complained about race-based conduct, disparate treatment, and threats directed toward him.

6.      Defendant failed to respond to Plaintiff's complaints in the same manner it responded to complaints by white employees, including complaints involving threats made by employees.

7.      Instead of protecting Plaintiff from discriminatory and retaliatory treatment, Defendant suspended and terminated Plaintiff.

8.      Defendant has asserted that Plaintiff was terminated because of alleged misconduct. Plaintiff denies Defendant's characterization of the events and alleges that Defendant's stated reason was false, incomplete, exaggerated, inconsistently applied, and a pretext for discrimination and retaliation.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over Plaintiff's Title VII and Section 1981 claims pursuant to 28 U.S.C. §§ 1331 and 1343.

10.     This Court has supplemental jurisdiction over Plaintiff's PHRA claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same facts and form part of the same case or controversy as Plaintiff's federal claims.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred in the Eastern District of Pennsylvania, including at Defendant's Easton, Pennsylvania facility.

12.     Defendant conducted business in the Eastern District of Pennsylvania and employed Plaintiff in this District at all relevant times.

**PARTIES**

13.    Plaintiff Levi Brown is an adult individual who resides in Pennsylvania.

14.    Plaintiff is African American.

15.    Defendant United Parcel Service of America, Inc. is a corporation that conducts business in Pennsylvania and employed Plaintiff at all relevant times.

16.    At all relevant times, Defendant was an employer within the meaning of Title VII and the PHRA.

17.    At all relevant times, Defendant was capable of entering and maintaining contractual employment relationships within the meaning of 42 U.S.C. § 1981.

18.    At all relevant times, the managers, supervisors, security personnel, human resources personnel, and other employees referenced in this Complaint were acting within the course and scope of their employment or agency with Defendant.

**ADMINISTRATIVE EXHAUSTION**

19.    Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

20.    Plaintiff requested that the Charge be dual-filed with the Pennsylvania Human Relations Commission.

21.    The Charge alleged race discrimination, color discrimination, hostile work environment, and retaliation.

22.    More than one year has elapsed since the filing of the Charge with the Pennsylvania Human Relations Commission.

23.    The EEOC issued a Dismissal and Notice of Rights dated April 30, 2026.

24.    Plaintiff has satisfied all conditions precedent to filing this action.

## FACTUAL ALLEGATIONS

25.    Defendant hired Plaintiff on or about October 18, 2021 as a package handler.

26.    On or about March 3, 2023, Defendant promoted Plaintiff to a full-time supervisor position.

27.    Plaintiff performed his job duties at Defendant's facility located at 1620 Van Buren Road, Easton, Pennsylvania 18045.

28.    Plaintiff was qualified for his position.

29.    Plaintiff satisfactorily performed his job duties.

30.    Before Defendant formally promoted Plaintiff to full-time supervisor in or about March 2023, Plaintiff regularly performed the same or substantially similar duties as full-time supervisors at the Easton facility.

31.    Plaintiff covered multiple operational areas, attended full-time supervisor and management meetings, participated in full-time supervisor communications, and performed supervisory responsibilities ordinarily assigned to full-time supervisors.

32.    During this period, Plaintiff was paid as a part-time supervisor despite performing full-time supervisory duties.

33.    Upon information and belief, white employees who performed the same or substantially similar full-time supervisory duties were paid at the higher full-time supervisor rate and/or received compensation, benefits, bonuses, management incentive compensation, or other advantages not provided to Plaintiff.

34.    Defendant's decision to require Plaintiff to perform full-time supervisory duties while compensating him at a lower rate than similarly situated white employees is further evidence of race discrimination and disparate treatment.

35.     Plaintiff's supervisors and managers included Joe Scicutella and David McClelland, both white Hub Managers.

36.     Upon information and belief, Plaintiff was the only African American male full-time supervisor at the Easton facility during relevant portions of his employment.

37.     Plaintiff worked in an environment in which white managers and supervisors made racially charged comments about African American supervisors and managers.

38.     White managers and supervisors discussed African American supervisors with white supervisors, including Chase Dougherty, Cory Cockley, and Emily Klingensmith.

39.     White managers and supervisors made unflattering comments regarding African American supervisors, including comments such as "She'll quit if she breaks a sweat," "She'll never last on the floor," "That's another one of DL's people," and "I'll sit around and get a check."

40.     "DL" referred to Derek Lawrence, an African American Hub Manager.

41.     White managers and supervisors did not make the same unflattering comments about white supervisors.

42.     Chase Dougherty and Cory Cockley informed Plaintiff that they wanted Derek Lawrence, an African American manager, fired.

43.     Chase Dougherty stated words to Plaintiff to the effect of, "I know that's your boy, but besides promoting Cockley, what other promotions are good ones?"

44.     Cory Cockley stated to Plaintiff that he hated that he was promoted by Derek Lawrence because Derek Lawrence promoted "his people."

45.     Chase Dougherty stated to Plaintiff that Derek Lawrence would promote any decent part-time supervisor if they had a "lil color."

46.    Chase Dougherty stated to Plaintiff that Cory Cockley was too pale to be one of Derek Lawrence's favorites.

47.    These comments reflected racial stereotypes and resentment toward African American managers, supervisors, and employees.

48.    The comments suggested that African American employees were promoted because of race rather than qualifications, performance, or merit.

49.    The race-based comments were not isolated events.

50.    The race-based comments were heard by Plaintiff and contributed to a hostile and discriminatory work environment.

51.    On or about June 6, 2023, David McClelland threatened Plaintiff's job after open packages were allegedly placed in Plaintiff's work area.

52.    Defendant did not threaten the jobs of white full-time supervisors when open packages were placed in areas that they oversaw, even though such issues occurred frequently.

53.    In or around late June 2023, David McClelland threatened that he was going to ' "f*** up" Plaintiff.

54.    McClelland did not make comparable threats toward white full-time supervisors.

55.    McClelland's threat violated Defendant's policies and standards of workplace conduct.

56.    Multiple management employees were present for and/or aware of McClelland's threat, including individuals who could readily have been interviewed during an investigation.

57.    Plaintiff complained about McClelland's threat to Joe Scicutella.

58.    Plaintiff met with Scicutella regarding the threat and advised that he was uncomfortable with McClelland's conduct and the manner in which he was being treated.

59.     Plaintiff advised management that supervisors should not be subjected to threats by higher-level managers.

60.     Plaintiff's complaint was made in the context of ongoing race-based comments,

61.     In complaining to Scicutella, Plaintiff specifically advised that he believed McClelland felt comfortable speaking to him in that manner because of Plaintiff's appearance, skin color, and size.

62.     Plaintiff further advised Scicutella that no other full-time supervisor was spoken to in the manner McClelland spoke to Plaintiff.

63.     Scicutella did not direct a meaningful investigation into Plaintiff's race-based complaint and instead characterized the matter as involving different management styles, including words to the effect that McClelland "comes in hot."

64.     Scicutella's response minimized Plaintiff's race-based complaint and failed to address Plaintiff's concern that he was being treated differently because of his race and color. discriminatory treatment, and disparate enforcement of workplace rules.

65.     Plaintiff reasonably believed that the threat and Defendant's response to the threat were connected to race-based discrimination and harassment.

66.     Plaintiff's complaint constituted opposition to conduct that he reasonably believed violated Title VII, Section 1981, and the PHRA.

67.     Despite the availability of witnesses, Defendant failed to conduct a meaningful investigation into Plaintiff's complaint regarding McClelland's threat.

68.     Defendant did not interview relevant witnesses concerning Plaintiff's complaint.

69.     Defendant did not discipline McClelland for threatening Plaintiff.

70.     Defendant did not take prompt or adequate remedial action in response to Plaintiff's complaint.

71.     By contrast, when a white employee complained that another employee had made a threat in the workplace, Defendant immediately investigated that complaint.

72.     Upon information and belief, after the white employee complained about the threat, Defendant terminated the employee accused of making the threat.

73.     Defendant treated Plaintiff's complaint of workplace threats less favorably than similar complaints made by white employees.

74.     Defendant's materially different treatment of Plaintiff's complaint supports an inference of race discrimination and retaliation.

75.     White full-time supervisors, including Chase Dougherty and Cory Cockley, made numerous derogatory statements about Pride month.

76.     Management was aware of the derogatory statements about Pride month and did not discipline the employees making those statements or stop the conduct.

77.     White full-time supervisors, including Chase Dougherty and Cory Cockley, commented that African Americans were the only race displayed on the UPSers.com homepage and made comments such as "you wouldn't think anyone white works here based on this."

78.     Cory Cockley, in front of David McClelland, called Plaintiff a "made man" because of Plaintiff's race and promotion to full-time supervisor and because higher-level managers were Black.

79.     The "made man" comment was racially charged and reflected the view that Plaintiff's advancement was attributable to race rather than merit.

80.     The "made man" comment contributed to the racially hostile work environment.

81.     The comments directed at Plaintiff and other African American supervisors specifically referenced African American members of management and suggested that African American employees were advanced because of race rather than qualifications, performance, or merit.

82.     A white Security Supervisor identified as Raya threatened Plaintiff by stating that she was "coming for him."

83.     Upon information and belief, Raya threatened Plaintiff because he is African American.

84.     Raya did not similarly threaten white full-time supervisors.

85.     On or about July 13, 2023, Raya questioned Plaintiff about his supervisory skills and suggested that Plaintiff had touched someone inappropriately.

86.     Raya did not specifically identify the person whom Plaintiff supposedly touched inappropriately.

87.     Plaintiff denied touching anyone inappropriately.

88.     Plaintiff was not provided sufficient information concerning the accusations to meaningfully respond to them.

89.     Following this questioning, Defendant suspended Plaintiff.

90.     Defendant's suspension of Plaintiff was an adverse employment action.

91.     Plaintiff had already complained about discriminatory treatment and McClelland's threat before Defendant suspended him.

92.     The timing of Plaintiff's suspension supports an inference of retaliation.

93.     On or about August 9, 2023, Defendant terminated Plaintiff's employment.

94.     When he was terminated Plaintiff asked why he was being terminated.

95.     During the termination meeting, Plaintiff asked why he was being terminated.

96.     Defendant failed to provide Plaintiff with a meaningful explanation for the termination.

97.     Defendant did not identify any policy violation that Plaintiff allegedly committed.

98.     Defendant did not provide Plaintiff with the factual basis for the termination decision.

99.     Defendant's failure to provide a reason for the termination is evidence that Defendant's later-articulated justification was not the true reason for its decision.

100.    Defendant has subsequently asserted that Plaintiff was terminated based upon allegations of inappropriate conduct and purported policy violations.

101.    Plaintiff denies Defendant's allegations and denies Defendant's characterization of the events.

102.    Defendant did not provide Plaintiff a legitimate, non-discriminatory, and non-retaliatory reason for his termination at the time of termination.

103.    Defendant has since asserted that Plaintiff was terminated based upon allegations of inappropriate conduct and purported violations of company policy.

104.    Plaintiff denies Defendant's allegations and denies Defendant's characterization of the events.

105.    Defendant's asserted reason was false, incomplete, exaggerated, and not the true reason for Plaintiff's suspension and termination.

106.    Defendant did not conduct the investigation in a fair, impartial, and even-handed manner.

107. Defendant did not apply its policies to Plaintiff in the same way it applied those policies to white employees.

108. Defendant failed to investigate Plaintiff's complaint regarding McClelland's threat while crediting complaints and accusations against Plaintiff.

109. Defendant's failure to investigate Plaintiff's complaint, while aggressively pursuing allegations against Plaintiff, is evidence of pretext.

110. Defendant never applied the same urgency, scrutiny, or investigatory resources to Plaintiff's complaint of workplace threats that it applied to complaints made by white employees.

111. Defendant's willingness to credit allegations against Plaintiff while disregarding Plaintiff's own complaint supports an inference that Defendant's investigation was not fair or impartial.

112. Defendant's selective enforcement of its policies is evidence of discriminatory and retaliatory motive.

113. Defendant's failure to follow its own policies concerning reports of threats, harassment, and retaliation is evidence that Defendant's stated reason for Plaintiff's suspension and termination was a pretext.

114. A reasonable employer acting in good faith would have thoroughly investigated Plaintiff's complaint before disregarding it.

115. Defendant failed to do so.

116. Defendant's immediate investigation and termination response when a white employee complained of a threat, compared to Defendant's failure to meaningfully investigate Plaintiff's complaint of a threat, is evidence of disparate treatment and pretext.

117. Defendant's reliance on accusations against Plaintiff shortly after Plaintiff complained about discriminatory treatment and threats is evidence of retaliation.

118. Defendant's treatment of Plaintiff was inconsistent with its written policies prohibiting discrimination, harassment, threats, and retaliation.

119. Defendant's written policies state that employees may report concerns and that Defendant will not retaliate against employees for good-faith reports.

120. Defendant's written policies state that Defendant prohibits discrimination, harassment, threats, inappropriate remarks, and inappropriate physical contact.

121. Defendant failed to protect Plaintiff from race-based harassment, threats, or retaliation.

122. Defendant failed to discipline white employees and managers who engaged in race-based conduct or threats toward Plaintiff.

123. Defendant gave white supervisors preference over African American supervisors concerning discretionary days off and workplace treatment.

124. David McClelland made a derogatory remark to Plaintiff after Plaintiff called out sick in July 2023.

125. White managers did not make comparable derogatory remarks to white supervisors who called out sick.

126. Plaintiff was replaced by a white male, Cory Cockley.

127. Following Plaintiff's termination, Cory Cockley assumed Plaintiff's position and responsibilities.

128. Cory Cockley was given more responsibility and treated with more respect by white managers than Plaintiff had been given.

129. Upon information and belief, Cockley received support, assistance, and opportunities from management that had not been afforded to Plaintiff.

130. Defendant provided Cockley with advantages, support, and opportunities that were denied to Plaintiff.

131. The more favorable treatment of Cockley supports an inference that Defendant treated white supervisors more favorably than Plaintiff.

132. Plaintiff's replacement by a white employee supports an inference of race discrimination.

133. Defendant's disparate treatment of Plaintiff compared to white supervisors supports an inference of race discrimination.

134. Defendant's disparate treatment of Plaintiff's complaint compared to a white employee's complaint supports an inference of retaliation.

135. Plaintiff's race and color were motivating factors in Defendant's treatment of Plaintiff, suspension of Plaintiff, and termination of Plaintiff.

136. Plaintiff's opposition to discriminatory treatment and threats was a motivating factor in Defendant's suspension and termination of Plaintiff.

137. But for Plaintiff's race, Defendant would not have subjected Plaintiff to the discriminatory treatment described above.

138. But for Plaintiff's protected activity, Defendant would not have suspended and terminated Plaintiff.

139. As a result of Defendant's conduct, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, embarrassment, anxiety, inconvenience, damage to reputation, and other damages.

## COUNT I
## TITLE VII - RACE AND COLOR DISCRIMINATION

140.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

141.    Plaintiff is African American and is a member of a protected class based upon race and color.

142.    Plaintiff was qualified for his full-time supervisor position.

143.    Plaintiff satisfactorily performed his job duties.

144.    Defendant subjected Plaintiff to adverse employment actions, including suspension and termination.

145.    Plaintiff was replaced by a white employee.

146.    Defendant treated similarly situated white employees more favorably than Plaintiff.

147.    Defendant also treated similarly situated white employees more favorably by compensating white employees at a higher rate for performing the same or substantially similar full-time supervisory duties that Plaintiff performed while being paid at a lower part-time supervisor rate.

148.    Defendant treated complaints by white employees, including complaints about workplace threats, more favorably than Plaintiff's complaints.

149.    Defendant failed to meaningfully investigate Plaintiff's complaint regarding McClelland's threat while promptly investigating a comparable threat complaint made by a white employee.

150. Defendant did not discipline McClelland for threatening Plaintiff, while Defendant terminated an employee accused of making a threat after a comparable complaint by a white employee.

151. White supervisors were not subjected to the same threats, scrutiny, discipline, or adverse treatment imposed upon Plaintiff.

152. Defendant afforded Cory Cockley, a white employee, support, assistance, responsibilities, opportunities, and favorable treatment that Defendant did not afford Plaintiff.

153. The racially charged comments, disparate treatment, comparator evidence, failure to investigate Plaintiff's complaint, replacement by a white employee, and suspicious timing of the suspension and termination give rise to an inference of discrimination.

154. Plaintiff's race and color were motivating factors in Defendant's decision to suspend and terminate Plaintiff.

155. Defendant's stated reason for Plaintiff's suspension and termination was false, incomplete, exaggerated, inconsistently applied, and a pretext for race and color discrimination.

156. Defendant violated Title VII.

157. Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

WHEREFORE, Plaintiff demands judgment against Defendant under Title VII and seeks all relief available by law, including reinstatement or front pay, back pay, compensatory damages, damages for emotional distress, prejudgment and post judgment interest, attorneys' fees and costs under 42 U.S.C. § 2000e-5(k), and such other legal and equitable relief as the Court deems just and proper.

## COUNT II
## TITLE VII - HOSTILE WORK ENVIRONMENT

158.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

159.    Plaintiff suffered intentional discrimination because of his race and color.

160.    Plaintiff was subjected to unwelcome race-based comments, stereotypes, threats, and disparate treatment.

161.    White managers and supervisors repeatedly made racially charged comments concerning African American supervisors and managers.

162.    White managers and supervisors stated or implied that African American managers promoted only "their people."

163.    White managers and supervisors stated or implied that promotions of African American employees were not merit-based.

164.    Plaintiff was called a "made man" because of his race and promotion.

165.    Additional comments in the workplace suggested that African American employees received advancement based on race rather than merit.

166.    Plaintiff was threatened by McClelland and Raya under circumstances supporting an inference that the threats were connected to race-based animus and disparate treatment.

167.    The racial comments, stereotypes, threats, and disparate treatment were severe or pervasive.

168.    The conduct detrimentally affected Plaintiff.

169.    The conduct would have detrimentally affected a reasonable African American employee in Plaintiff's position.

170.    Defendant knew or should have known about the hostile work environment.

171.    Plaintiff complained to management regarding threats and discriminatory conduct.

172.    Defendant failed to take prompt and adequate remedial action.

173.    Defendant failed to interview available witnesses or investigate Plaintiff's complaint regarding McClelland's threat.

174.    Defendant's failure to respond to Plaintiff's complaint in the same manner it responded to complaints by white employees contributed to and ratified the hostile work environment.

175.    Defendant violated Title VII.

176.    Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

WHEREFORE, Plaintiff demands judgment against Defendant under Title VII and seeks all relief available by law, including reinstatement or front pay, back pay, compensatory damages, damages for emotional distress, prejudgment and post judgment interest, attorneys' fees and costs under 42 U.S.C. § 2000e-5(k), and such other legal and equitable relief as the Court deems just and proper.

## **COUNT III**
## **TITLE VII – RETALIATION**

177.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

178.    Plaintiff opposed conduct that he reasonably believed constituted race discrimination, color discrimination, and race-based harassment.

179.    Plaintiff complained about race-based treatment and threats directed toward him, including McClelland's threat that he would "f*** up" Plaintiff.

180.    Plaintiff complained to Scicutella about McClelland's threat and advised that he was uncomfortable with the manner in which he was being treated.

181.    Plaintiff specifically advised management that he believed McClelland's conduct was related to Plaintiff's race, skin color, appearance, and size.

182.    Plaintiff's complaints constituted protected activity under Title VII.

183.    Defendant knew that Plaintiff complained about discriminatory treatment and threats.

184.    Defendant subjected Plaintiff to materially adverse employment actions after his protected activity.

185.    Those materially adverse employment actions included suspension and termination.

186.    The temporal proximity between Plaintiff's protected complaints and Defendant's suspension and termination supports an inference of causation.

187.    Defendant's failure to investigate Plaintiff's complaint, while immediately investigating a comparable threat complaint by a white employee, supports an inference of retaliatory motive.

188.    Defendant's termination of an employee accused of threatening a white employee, while taking no meaningful action against McClelland after Plaintiff complained of a threat, supports an inference of retaliatory motive and pretext.

189.    Defendant's refusal to investigate Plaintiff's complaint despite the availability of witnesses supports an inference that Defendant was not acting in good faith.

190.    Defendant's disparate treatment of Plaintiff's complaint compared to complaints made by white employees supports an inference that Plaintiff's protected activity was a substantial factor in Defendant's decision-making.

191.    Defendant's selective reliance on allegations against Plaintiff while ignoring Plaintiff's own complaint is evidence of pretext.

192.    Defendant's explanation for the suspension and termination has shifted, expanded, or been applied inconsistently and therefore supports an inference of retaliation.

193.    Defendant's reliance on accusations against Plaintiff shortly after Plaintiff complained about discriminatory treatment and threats supports an inference of retaliation.

194.    Defendant's stated reason for Plaintiff's suspension and termination was false, incomplete, exaggerated, inconsistently applied, and a pretext for retaliation.

195.    Plaintiff's protected activity was a motivating factor in Defendant's decision to suspend and terminate Plaintiff.

196.    Defendant violated Title VII.

197.    Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

WHEREFORE, Plaintiff demands judgment against Defendant under Title VII and seeks all relief available by law, including reinstatement or front pay, back pay, compensatory damages, damages for emotional distress, prejudgment and post judgment interest, attorneys' fees and costs under 42 U.S.C. § 2000e-5(k), and such other legal and equitable relief as the Court deems just and proper.

## COUNT IV
## 42 U.S.C. § 1981 - RACE DISCRIMINATION

198.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

199.     Plaintiff is African American.

200.     Plaintiff had a contractual employment relationship with Defendant.

201.     Defendant intentionally discriminated against Plaintiff because of race.

202.     Defendant impaired Plaintiff's contractual employment relationship by subjecting him to race-based disparate treatment, suspension, and termination.

203.     White employees were treated more favorably than Plaintiff with respect to threats, complaints, discipline, investigations, discretionary treatment, support, opportunities, responsibilities, and continued employment.

204.     White employees also were compensated at a higher rate for performing the same or substantially similar full-time supervisory duties that Plaintiff performed while being paid at a lower part-time supervisor rate.

205.     Defendant's failure to investigate Plaintiff's complaint in the same manner it investigated a comparable complaint by a white employee is evidence of intentional race discrimination.

206.     Defendant's replacement of Plaintiff with a white employee is evidence of intentional race discrimination.

207.     Defendant's more favorable treatment of Cockley is evidence of intentional race discrimination.

208.     But for Plaintiff's race, Defendant would not have suspended or terminated Plaintiff.

209. Defendant's stated reason for Plaintiff's suspension and termination was false, incomplete, exaggerated, inconsistently applied, and pretextual.

210. Defendant violated 42 U.S.C. § 1981.

211. Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

WHEREFORE, Plaintiff demands judgment against Defendant under 42 U.S.C. § 1981 and seeks compensatory damages, emotional distress damages, declaratory and injunctive relief, attorneys' fees and costs under 42 U.S.C. § 1988, interest, and all other appropriate relief.

## COUNT V
## 42 U.S.C. § 1981 – RETALIATION

212. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

213. Plaintiff opposed race discrimination and race-based harassment in the workplace.

214. Plaintiff complained about discriminatory treatment and threats directed toward him.

215. Plaintiff complained to management about McClelland's threat and the manner in which he was being treated.

216. Plaintiff specifically complained that he believed McClelland's treatment of him was related to Plaintiff's race, skin color, appearance, and size.

217. Plaintiff engaged in protected activity under 42 U.S.C. § 1981.

218. Defendant knew of Plaintiff's protected activity.

219. Defendant suspended and terminated Plaintiff after Plaintiff engaged in protected activity.

220.    Defendant treated Plaintiff's protected complaints less favorably than complaints by white employees.

221.    Defendant's materially different handling of Plaintiff's threat complaint compared to a white employee's threat complaint supports an inference of retaliation.

222.    Defendant's failure to interview available witnesses or meaningfully investigate Plaintiff's complaint supports an inference of pretext.

223.    Defendant's asserted reason for terminating Plaintiff was false, incomplete, exaggerated, inconsistently applied, and a pretext for retaliation.

224.    But for Plaintiff's protected activity opposing race discrimination, Defendant would not have suspended or terminated Plaintiff.

225.    Defendant violated 42 U.S.C. § 1981.

226.    Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

WHEREFORE, Plaintiff demands judgment against Defendant under 42 U.S.C. § 1981 and seeks compensatory damages, emotional distress damages, declaratory and injunctive relief, attorneys' fees and costs under 42 U.S.C. § 1988, interest, and all other appropriate relief.

## COUNT VI
## PHRA - RACE AND COLOR DISCRIMINATION

227.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

228.    Plaintiff is African American and is a member of a protected class based upon race and color.

229.    Plaintiff was qualified for his position and satisfactorily performed his job duties.

230. Defendant subjected Plaintiff to adverse employment actions, including suspension and termination.

231. Plaintiff was replaced by a white employee.

232. Defendant treated similarly situated white employees more favorably than Plaintiff

233. Defendant also compensated similarly situated white employees at a higher rate for performing the same or substantially similar full-time supervisory duties that Plaintiff performed while being paid at a lower part-time supervisor rate.

234. Defendant treated complaints by white employees, including complaints about workplace threats, more favorably than Plaintiff's complaints.

235. Defendant afforded Cory Cockley support, assistance, responsibilities, opportunities, and favorable treatment that Defendant did not afford Plaintiff.

236. The facts alleged above give rise to an inference of race and color discrimination.

237. Plaintiff's race and color were motivating factors in Defendant's treatment of Plaintiff, suspension of Plaintiff, and termination of Plaintiff.

238. Defendant's stated reason for Plaintiff's suspension and termination was false, incomplete, exaggerated, inconsistently applied, and pretextual.

239. Defendant violated the PHRA.

240. Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

WHEREFORE, Plaintiff demands judgment against Defendant under the PHRA and seeks compensatory damages, damages for humiliation and emotional distress, attorneys' fees and costs, interest, equitable relief, and all other relief available under Pennsylvania law.

## COUNT VII
## PHRA - HOSTILE WORK ENVIRONMENT

241.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

242.    Plaintiff suffered intentional discrimination because of his race and color.

243.    Plaintiff was subjected to unwelcome race-based comments, stereotypes, threats, and disparate treatment.

244.    The conduct was severe or pervasive.

245.    The conduct detrimentally affected Plaintiff.

246.    The conduct would have detrimentally affected a reasonable African American employee in Plaintiff's position.

247.    Defendant knew or should have known about the race-based hostile work environment.

248.    Plaintiff complained to Defendant regarding threats and discriminatory conduct.

249.    Defendant failed to take prompt and adequate remedial action.

250.    Defendant failed to interview available witnesses or investigate Plaintiff's complaint regarding McClelland's threat.

251.    Defendant's failure to investigate Plaintiff's complaint in the same manner it investigated comparable complaints by white employees contributed to the hostile work environment.

252.    Defendant violated the PHRA.

253.    Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

WHEREFORE, Plaintiff demands judgment against Defendant under the PHRA and seeks compensatory damages, damages for humiliation and emotional distress, attorneys' fees and costs, interest, equitable relief, and all other relief available under Pennsylvania law.

**COUNT VIII**
**PHRA – RETALIATION**

254. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

255. Plaintiff opposed conduct that he reasonably believed constituted race discrimination, color discrimination, and race-based harassment.

256. Plaintiff complained about discriminatory treatment and threats directed toward him.

257. Plaintiff complained to Scicutella about McClelland's threat and the manner in which he was being treated.

258. Plaintiff specifically complained that he believed McClelland's treatment of him was related to Plaintiff's race, skin color, appearance, and size.

259. Plaintiff engaged in protected activity under the PHRA.

260. Defendant knew that Plaintiff engaged in protected activity.

261. Defendant subjected Plaintiff to materially adverse employment actions, including suspension and termination.

262. The temporal proximity between Plaintiff's complaints and Defendant's adverse actions supports an inference of causation.

263. Defendant's different treatment of Plaintiff's complaints compared to complaints by white employees supports an inference of retaliation.

264. Defendant's refusal to investigate Plaintiff's complaint despite available witnesses supports an inference that Defendant was not acting in good faith.

265. Defendant's selective reliance on allegations against Plaintiff while ignoring Plaintiff's own complaint is evidence of pretext.

266. Defendant's stated reason for Plaintiff's suspension and termination was false, incomplete, exaggerated, inconsistently applied, and a pretext for retaliation.

267. Plaintiff's protected activity was a motivating factor in Defendant's suspension and termination of Plaintiff.

268. Defendant violated the PHRA.

269. Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

WHEREFORE, Plaintiff demands judgment against Defendant under the PHRA and seeks compensatory damages, damages for humiliation and emotional distress, attorneys' fees and costs, interest, equitable relief, and all other relief available under Pennsylvania law.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**BROUGHAL & DeVITO, L.L.P.**

Dated:  7/27/2026          By:  /s/ John S. Harrison
                                    JOHN S. HARRISON, ESQUIRE
                                    Attorney I.D. No. 53864
                                    ERIKA A. FARKAS, ESQUIRE
                                    Attorney I.D. No. 313686
                                    38 West Market Street
                                    Bethlehem, PA 18018
                                    Telephone No.:  (610) 865-3664
                                    Facsimile No.:  (610) 865-0969
                                    *Attorneys for Plaintiff*